# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **DENISE CAREY,** | : | |
|     Plaintiff | : | |
| | : | |
|     v. | : | 05-CV-2534 |
| | : | |
| **CITY OF WILKES-BARRE, et al.,** | : | **JUDGE VANASKIE** |
|     Defendants | : | |

## MEMORANDUM AND ORDER

This matter is before the Court on Plaintiff's objections to a Magistrate Judge's Report and Recommendation (R&R), (Dkt. Entry 35), proposing that Defendants' Motion to Dismiss (Dkt. Entry 7) be granted.  The record has been reviewed de novo, as required by 28 U.S.C. § 636(b)(1), and the parties' contentions have been accorded plenary consideration.

Plaintiff Denise Carey filed this action under 42 U.S.C. § 1983, alleging Defendants violated her substantive due process rights by closing a neighborhood fire station ("Heights Fire Station").  Ms. Carey alleges that the closing of the fire station "affirmatively placed all residents in the Heights area in a position of danger, effectively stripping them of their ability to defend themselves against fires, which ultimately cause, and have caused property damage, as well as the increased risk . . . of bodily harm . . . ." (Compl., Dkt. Entry 1, ¶ 12.)  Ms. Carey further asserts that Defendants "acted with reckless indifference to the plight of the Heights residents," (id. ¶ 13), and "abused their powers by creating a dangerous

environment . . . since by the closure of the Heights' Fire Station, the residents [including Plaintiff] do not have adequate fire protection, which has and will continue to violate their property rights secured by the Due Process Clause." (Id. ¶ 14 (footnote omitted).)  Ms. Carey does not aver that she sustained some specific loss as a result of the closure of the fire station.  Instead, the only injury Ms. Carey allegedly sustained is emotional harm related to the perceived increased risk of danger from the closing of the Heights Fire Station.  Her premise for liability is the "state-created-danger" theory recognized by the Third Circuit in Kneipp v. Tedder, 95 F.3d 1199 (3d Cir. 1996).  She has also presented a claim that the closing of the station violated a local ordinance.

      Magistrate Judge Mannion, to whom the matter had been assigned for pretrial management pursuant to this Court's policy for the random assignment of cases, recommends in the R&R that the action be dismissed because emotional harm alone is not subject to protection by the substantive component of the Fourteenth Amendment Due Process Clause.  In addition, he concludes that the closing of a fire station cannot be regarded as "conscience shocking" conduct, the stringent liability standard for a substantive due process claim. (Dkt. Entry 35, at 11-14.)

      Ms. Carey's objections to the R&R essentially reiterate the arguments she presented to the Magistrate Judge.  His thorough analysis of the issue is consistent with the governing law.  Ms. Carey cannot maintain a substantive due process claim for the closing of a fire

station in light of the fact that her only harm is alleged anxiety.  Moreover, the decision of the Mayor of Wilkes-Barre to close the Heights Fire Station cannot support an inference of deliberate indifference to the safety of the residents of the neighborhood such that it would be regarded as "conscience shocking."  The decision to close the fire station is the type of decision delegated to elected officials after considering all pertinent aspects of the matter, with the elected officials to be held accountable at the ballot box, and not in a federal court, especially where the complaining party has not sustained a compensable injury.  As the Court of Appeals for the Sixth Circuit explained recently in rejecting a substantive due process claim for failure to enact a traffic safety ordinance in the context of the death of a child:

> Many, if not most, governmental policy choices come with risks attached to both of the competing options, and yet "it is not a tort for government to govern" by picking one option over another.  Scheuer v. Rhodes, 416 U.S. 232, 241 (1974) (quoting Dalehite v. United States, 346 U.S. 15, 57, (1953) (Jackson, J., dissenting)).  Because the demands on a government may be as manifold as its resources are limited, the Court has recognized in DeShaney and elsewhere that the practicalities of day-to-day governance require officials to make difficult allocation choices and tradeoffs and that it is generally not for the courts to compel affirmative steps in one area at the expense of another in weighing competing policy options.  See DeShaney[ v. Winnebago County Dep't of Soc. Servs., 489 U.S. [189,]203 (1989)] (recognizing that the defendant social workers faced a difficult policy decision because, "had they moved too soon to take custody of the son away from the father, they would likely have been met with charges of improperly intruding into the parent-child relationship, charges based on the same Due Process Clause that forms the basis for the present charge of failure to provide adequate protection"); Collins v. City of Harker Heights, 503 U.S. 115, 128-29 (1992) (observing that "[d]ecisions concerning the allocation of resources to

individual programs ... involve a host of policy choices that must be made by locally elected representatives"); see also Dawson v. Milwaukee Hous. Auth., 930 F.2d 1283, 1286 (7th Cir.1991) (recognizing that "[j]udicial directives to devote more resources to safety do not create more resources" but merely "reallocate resources").

Schroder v. City of Fort Thomas, 412 F.3d 724, 729-30 (6th Cir. 2005).

The only point advanced by Plaintiff in her objections to the R&R worthy of discussion in any detail is her contention that she can recover simply because Defendants' actions created an increased risk of harm. Citing Kallstrom v. City of Columbus, 136 F.3d 1055 (6th Cir. 1998), Ms. Carey argues that a "risk of harm" is sufficient to support a substantive due process claim. (Reply Br. in Supp. of Objections, Dkt. Entry 41, at 2.)

Kallstrom is plainly distinguishable. There, plaintiffs, undercover police officers, filed a § 1983 lawsuit against the city claiming the city violated their right to privacy guaranteed by the Due Process Clause. Specifically, plaintiffs alleged that the city released personal information, including addresses and phone numbers, of plaintiffs and their family members to a defense attorney who was representing several defendants in a drug conspiracy prosecution. Id. at 1059. Plaintiffs were active in the investigation and had testified against several of the defendants. Id. The defense attorney had passed along the personal information to several defendants, who were members of a street gang known for its propensity for violence. Id.

The court in Kallstrom first determined that the disclosure of plaintiffs' personal

information to the defense attorney rose to "constitutional dimensions" because it implicated plaintiffs' liberty interest of "personal security and bodily integrity." Id. at 1062-63. The city's actions created a serious risk to plaintiffs because the personal information was eventually disclosed to violent individuals likely to seek revenge for plaintiffs' involvement in the drug conspiracy investigation and trial. Id. at 1063. The court then addressed the state-created-danger theory. "Liability under [this theory] is predicated upon affirmative acts by the state which either create or increase the risk that an individual will be exposed to private acts of violence." Id. at 1066. However, since many state acts may potentially increase the risk of harm, a plaintiff must establish a "special danger," or one "where the state's actions place the victim specifically at risk, as distinguished from a risk that affects the public at large." Id. In Kallstrom, the city's affirmative release of personal information placed plaintiffs' personal safety, as opposed to the public at large, in serious jeopardy. The city knew or should have known that its actions would substantially increase plaintiffs' vulnerability to "private acts of vengeance." Id. at 1067. Therefore, the city was liable under § 1983.

     Ms. Carey's situation is not at all like that confronting the plaintiffs in Kallstrom. First, the affirmative acts by the city in Kallstrom constituted an invasion of privacy, implicating plaintiffs' liberty interest in bodily integrity. Here, Defendants' decision to close the Heights Fire Station is not of the same "constitutional dimension" because no such interests are so directly implicated. Second, she cannot establish a special danger because the risk of harm

created, if any, affects the public at large and is not unique to her.  In <u>Kallstrom</u>, the city disclosed the personal information of <u>three</u> police officers, and only those <u>three</u> police officers were vulnerable to acts of revenge as a result.  In contrast, Defendants' decision to close the Heights Fire Station may impact the ability to respond to and extinguish fires throughout the Heights neighborhood and, for that matter, the entire City of Wilkes-Barre.  Third, the risk of harm created by the city's actions in <u>Kallstrom</u> was genuine because the street gang was known for its propensity for violence and intimidation.  Here, the danger perceived by Ms. Carey is speculative at best.  As such, Ms. Carey's reliance upon <u>Kallstrom</u> is misplaced and does not justify sustaining her objections to the R&R.[1]

Plaintiff notes that, in responding to the motion to dismiss, she suggested that she may want to file an amended complaint to assert that the closing of the fire station violated her rights to procedural due process and equal protection of the laws.  (Reply Br. in Supp. of Objections, Dkt. Entry 41, at 6.)  Our Court of Appeals has held that, "even when a

---

[1]Subsequent decisions in the Sixth Circuit have allowed recovery under the state-created-danger theory only where "the government could have specified whom it was putting at risk, nearly to the point of naming the possible victim or victims." <u>Jones v. Reynolds</u>, 438 F.3d 685, 696 (6th Cir. 2006); <u>see</u> <u>Caldwell v. City of Louisville</u>, 120 Fed. Appx. 566, 573 (6th Cir. 2004) (abusive individual posed threat only to his girlfriend); <u>Waller v. Trippett</u>, 49 Fed. Appx. 45, 50 (6th Cir. 2002) (public employees working in a prison kitchen).  Where the victim was not identifiable at the time of the state action, there is no liability.  <u>Jones</u>, 438 F.3d at 697; <u>Schroder v. City of Fort Thomas</u>, 412 F.3d 724, 729 (6th Cir. 2005) (failing to enforce or lower speed limit posed only "a general traffic risk to pedestrians and other automobiles").

plaintiff does not seek leave to amend, if a complaint is vulnerable to 12(b)(6) dismissal, a District Court must permit a curative amendment, unless an amendment would be inequitable or futile." Alston v. Parker, 363 F.3d 229, 235 (3d Cir. 2004).

In this case, Plaintiff has not suggested a theory of relief that would be cognizable in a federal court.  She has not been deprived of any property or other constitutionally-protected interest sufficient to support a procedural due process claim.  Nor has she suffered any other form of compensable harm.  In short, Plaintiff has not shown that the closing of the fire station has caused her some injury-in-fact sufficient to confer standing to present a viable equal protection claim.  See Storino v. Borough of Point Pleasant Beach, 322 F.3d 293, 297-98 (3d Cir. 2003) (dismissing equal protection claim where plaintiffs did not show that challenged ordinance caused some particularized injury-in-fact that was either actual or imminent, but was instead only prospective and conjectural).  In this regard, emotional and psychological harm or anxiety do not constitute injury-in-fact sufficient to confer standing.  Hill v. Nassberg, 166 Fed. Appx. 608, 610 (3d Cir. 2006).  Furthermore, Ms. Carey's status as a taxpayer in Wilkes-Barre does not suffice to enable her to sue over the closure of the station.  Storino, 322 F.3d at 298 n.2.  Thus, leave to amend is not required here as the closing of the fire station is not alleged to have caused an actual or imminent harm to Ms. Carey.  In other words, allowing leave to amend would be futile

because Plaintiff cannot advance a viable federal cause of action here.[2]

**ACCORDINGLY, THIS 2nd DAY OF APRIL, 2007,** for the reasons set forth above,

**IT IS HEREBY ORDERED THAT:**

1. The Report and Recommendation of Magistrate Judge Mannion (Dkt. Entry 35) is **ADOPTED.**

2. Defendants' Motion to Dismiss (Dkt. Entry 7) is **GRANTED.**

3. Count I of the Complaint is **DISMISSED, WITH PREJUDICE.**

4. The Court declines to exercise supplemental jurisdiction over Count II.

5. Leave to amend the Complaint is **DENIED.**

6. The Clerk of Court is directed to mark this matter **CLOSED.**

                                                        **s/ Thomas I. Vanaskie**
                                                        Thomas I. Vanaskie
                                                        United States District Judge

---

[2] Plaintiff's complaint includes a state law claim.  This Court will exercise its discretion under 28 U.S.C. § 1367(c)(3) to decline jurisdiction over this claim.